**STATE, Plaintiff-Appellee, v. AMES, Defendant-Appellant.**

Ohio Appeals, Second District, Montgomery County.

No. 1957.   Decided December 2, 1947.

312

Mathias H. Heck, Pros. Atty., Dayton, Robert W. Schröader, William H. Wolff, Asst. Pros. Attys., Dayton, for plaintiff-appellee.

Herbert M. Eikenbary, Dayton, for defendant-appellant.

## OPINION

By MILLER, J.:

The defendant-appellant, Charles L. Ames, was jointly indicted with one Julius Emerick for first degree murder in that they did unlawfully and purposely kill one Herman A. Drexler, a police officer of the City of Dayton, while attempting to perpetrate a burglary. On motion of the defendant a separate trial was granted which resulted in a verdict of guilty without a recommendation of mercy.

Although several errors are assigned the entire brief of the defendant seems to be limited to the verdict of the jury in failing to recommend mercy. Although not a part of the record in this case counsel, for defendant has attached to his brief a certified copy of the finding of the jury in the Emerick case which recommended mercy. We are referred to §13449-1 GC which provides:

"For what causes a new trial granted. A new trial, after a verdict of conviction, may be granted on the application of the defendant for any of the following causes affecting materially his substantial rights.

\* \* \* \*

4. That the verdict is not sustained by sufficient evidence, or is contrary to law; but if the evidence shows the defendant to be not guilty of the degree of crime for which he was convicted, but guilty of a lesser degree thereof, or of a lesser crime included therein, the court may modify the verdict or finding accordingly, without granting or ordering a new trial."

\* \* \* \*

We have examined the record in this case and without attempting to review the testimony, which is quite voluminous, we find that there was ample evidence to support the verdict of guilty. We think the evidence is so strong and convincing that should the verdict have been otherwise there would have been a gross miscarriage of justice.

With reference to the recommendation of mercy, that is solely within the province of the jury and with which the Court cannot be concerned. The fact that Julius Emerick was more fortunate and received this recommendation can carry no legal weight as to what the verdict of this defendant should be. We find this question discussed at considerable length in the case of **Turner v State, 21 Abs. 276,** a case decided by the Second District Court of Appeals, Montgomery County, Ohio. At page 279 it is said:

"The right to recommend mercy in the event that the jury returned its verdict for murder in the first degree is a purely discretionary right vested solely in the jury and which no court would have any right to modify or review. Inasmuch as the recommendation of mercy is a right extended to the jury only, no court could modify that recommendation nor could a court extend mercy if the jury returned a verdict of first degree murder without recommendation of mercy. The burden of the State to convict the defendant of any offense with which he was charged was to establish proof of the elements of such offense beyond a reasonable doubt. The statute, §13449-1, part 4 GC, which authorizes the trial judge to modify a verdict, fix a lesser crime or reduce the degree of crime without granting or ordering a new trial, and which right is extended to any reviewing court, shifts entirely the burden from the State to the defendant. The condition under which any court may reduce the degree of guilt is predicated upon a finding that the evidence shows the defendant to be not guilty of the degree of crime for which he was convicted."

We are referred to the case of **Keith v State, 53 Oh Ap, p. 58**. In this case the Court found that there was no evidence in the record from which the jury was warranted in returning a verdict of murder in the first degree, and ordered the cause remanded and the accused sentenced for murder in the second degree. This case is entirely different from the facts in the case at bar in that we have found that there was ample evidence to support the verdict.

A second error assigned is that the court erred in the admission in evidence of burglar tools and other articles found in the appellant's room and in a garage under his control, later in the day and after the commission of the alleged crime. A part of this evidence consisted of a receipt for the rent of a garage at 18 Collet Place, Dayton, Ohio, and a key to this garage; a key to the bag of burglar tools found at the scene, a canvas satchel and cardboard box containing many other tools suitable for breaking and entering, including a piece of dynamite fuse similar to the fuse found later in the defendant's garage located at 18 Collet Place; also found in the room of the defendant was a large screw driver which matched one found on the scene of the robbery. Also found at the scene was a bag of burglar tools and a loaded clip for a 7.65 m. m. revolver. The key to this bag of tools as previously stated was found in the defendant's room.

Counsel has cited no authority to support his contention

on this proposition and which we believe cannot be supported. They were certainly admissible in evidence for the purpose of throwing some light on the intent of the defendant to perpetrate a robbery and to connect him directly with this robbery by circumstantial evidence. See Underhill's Criminal Evidence, 4th Ed. Sec. 625.

A third assignment of error is the alleged failure of the trial court to charge upon the law of expert testimony, to wit, "that all of it can be believed or disbelieved, and that an expert is subject to challenge as are any other of the lessor endowed individuals of life." We have examined the charge of the Court in this respect and we think it was fully covered when the Court said:

"Certain witnesses who testified have been referred to as 'experts' because of their study or occupation or experience in a certain field. They have given certain expressions of opinion. You have the right to consider the opinion of such a witness, provided you find that the facts upon which it is based are supported by the evidence; and you may give it such weight in the light of all the evidence, as it should be entitled to, having in mind the ability and experience of the witness, and subjecting it of course to the same tests of credibility as are to be applied to all other witnesses."

The defendant also assigns as error "that the inflammatory statements of the Prosecuting Attorney in his argument to the jury, so biased and prejudiced this defendant that he was totally and thereupon barred from a fair and impartial verdict. The statement of the Prosecuting Attorney, in substance, was, 'Send this man to the chair so that he cannot circulate with younger prisoners in the Ohio State Penitentiary and thus contaminate them.'" At page 371 of the record we find the attorney for the prosecution in the closing argument said:

"This man rents a garage. He pulls Emerick in and this thing is planned all the way through, so if someone got caught they would plead this master of a defense. Society has been paid, so let me go. That is the reason. All the facts and circumstances—there is no mercy in it. It is a hard thing to ask the death penalty, but I ask you, for what benefit you could let him live for? Let him go into a Penitentiary and educate and turn other young criminals back on society? Would that justify it, members of the jury? I don't think that could be found from these facts and circumstances."

These remarks, we think, were arguments from the facts and circumstances in the record that a recommendation of mercy should be withheld. This was held to be permissible in **Howell v State, 102 Oh St 413,** the third syllabus reading:

"In such a case, it is not error for the trial court to permit counsel for the State to argue that a recommendation for mercy should be withheld."

We find no merit in this assignment.

It is also contended by the appellant that after the trial and conviction of Emerick and the recommendation for mercy, that there were stories in several Dayton newspapers severely critizing this verdict and since the trial of this defendant started five days after the completion of the Emerick trial, that this so inflamed and aroused the jury that it was incapable of rendering a fair and impartial verdict. The effect of this publicity was probably a matter to be considered by the defendant in chosing a later separate trial. Although this publicity probably made it more difficult to obtain an impartial jury there is nothing in the record to indicate the slightest impropriety, much less prejudicial conduct on its part. The defendant was satisfied with this jury before it was sworn. We find nothing in the record to support the defendant's contention in this matter.

Although there seems to be some inconsistency in the punishment meted out to these two parties who were jointly indicted, it is not, as stated previously, within our province to change the verdicts of these juries. If the defendant is entitled to any modification of the verdict, it must be by executive clemency and not through relief by the courts.

The judgment is affirmed.

WISEMAN, PJ, and HORNBECK, J, concur.

## APPLICATION FOR REHEARING

Decided January 14, 1948.

## OPINION

By THE COURT:

This is an application for a rehearing, in which we find nothing which was not previously considered by this Court.

The application will be denied.

WISEMAN, PJ, MILLER and HORNBECK, JJ, concur.